# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA ALMANZA, | CASE NO. 2:16-CV-00293-SK |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

## I.

## <u>INTRODUCTION</u>

On January 13, 2016, Sandra Almanza ("Plaintiff") filed this action seeking review of the Commissioner's denial of her application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the undersigned U.S. Magistrate Judge. Plaintiff filed a motion for summary judgment ("Plaintiff's Mot.") on April 24, 2016, and Defendant filed a cross-motion for summary judgment on May 25, 2016. Having reviewed the entire file, the Court AFFIRMS the decision of the Commissioner.

## II.

## BACKGROUND

On January 14, 2013, Plaintiff filed an application for disability insurance benefits.  (Administrative Record ("AR") at 120-21).  Plaintiff alleged that beginning on November 1, 2010, she was unable to work due to lupus, fibromyalgia, severe body pain, high cholesterol and depression.  (AR at 62, 120).  The Commissioner denied Plaintiff's application initially.  (AR at 62-67).  On October 21, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 70-71).  The ALJ conducted a hearing on September 9, 2014.  (AR at 38-50).  Plaintiff appeared at the hearing with her counsel and testified.  (AR at 42-49).  A vocational expert also testified.  (AR at 42).

On November 6, 2014, the ALJ issued his decision denying benefits.  (AR at 20-37).  The ALJ found that Plaintiff suffers from a "severe" impairment, specifically, fibromyalgia.  (AR at 25).  The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of medium work.  (AR at 29).  Based on the testimony of the vocational expert, the ALJ determined that Plaintiff could perform her past relevant work as a customer service representative.  (AR at 33).  The ALJ concluded that Plaintiff was not disabled at any time through the date of his decision.  (AR at 34).  On January 5, 2015, Plaintiff requested review of the ALJ's decision.  (AR at 8).  On November, 27, 2015, the Appeals Council denied the request for review.  (AR at 11-17).

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  *See Berry v. Astrue,*

622 F.3d 1228, 1231 (9th Cir. 2010).  Substantial evidence means "more than a mere scintilla, but less than a preponderance." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008).  In other words, "it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  When determining whether substantial evidence supports the ALJ's findings, the Court must review the administrative record and consider adverse as well as supporting evidence. *See Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  "If the evidence can reasonably support either affirming or reversing," the Court "may not substitute its judgment" for that of the ALJ, and the ALJ's decision must be upheld.  *Id.* at 720-21; *see also Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.").

## IV.

## PLAINTIFF'S CREDIBILITY

Plaintiff contends that the ALJ failed to articulate legally sufficient reasons for rejecting her testimony regarding her subjective symptoms. (Plaintiff's Mot. at 4-9).  In evaluating the credibility of a claimant's subjective pain testimony, an ALJ must engage in a two-step inquiry. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler*, 775 F.3d at

1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).

Factors to consider in weighing a claimant's credibility include: the claimant's reputation for truthfulness; prior inconsistent statements or other inconsistent testimony; the claimant's daily activities; the claimant's work record; testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains; and an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

At the September 9, 2014 hearing, Plaintiff testified that she cannot work due to severe fibromyalgia pain. Plaintiff stated that she has good days and bad days, and that, on the bad days, she cannot do anything and has to lie down most of the time. (AR at 46-47). She described her pain level as 8/10 before medications and 5/10 after medications. (AR at 45). She further testified that she can lift a maximum of 5 to 10 pounds; walk for ten minutes at a time; sit for fifteen minutes at a time; and lie down for an hour at a time. (AR at 48).

In his November 6, 2014 decision, the ALJ gave the following reasons for discounting Plaintiff's subjective symptom testimony: (1) Plaintiff received only conservative treatment; (2) the objective medical evidence did not support Plaintiff's allegations; (3) the ALJ observed Plaintiff to have a "generally unpersuasive appearance and demeanor while testifying at the hearing"; and (4) Plaintiff's alleged symptoms were inconsistent with her activities of daily living. (AR at 29-31).

## A.  **Conservative Treatment**

"[A] conservative course of treatment can undermine allegations of debilitating pain." *Carmickle*, 533 F.3d at 1162; *see also Parra v. Astrue,*

481 F.3d 742, 750–51 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

In this case, although Plaintiff alleged an onset date of November 1, 2010, it appears that she did not seek treatment until January 2011. (AR at 200). She visited her primary care physician in January, March and May 2011, in order to obtain prescription medications. (AR at 200-10). At that time, her pain medications included Motrin, Naproxen (Aleve), and Tramadol. (AR at 202, 204, 208). After May 2011, there was another gap in treatment until January 2012. (AR at 210). From January 2012 through August 2012, she made several visits to her primary care physician, mostly for medication refills. (AR at 210-27). After August 2012, there was yet another gap in treatment, and her next visit to her primary care physician was not until February 2013. (AR at 227). Sometime in 2013, she began taking Nortriptyline and Gabapentin (Neurontin) to treat her pain. (AR at 46, 267, 281-82, 286).

The ALJ did not err in characterizing this treatment history as conservative. The record contains no evidence that Plaintiff received any injections, physical therapy, or even a referral to a pain specialist. Rather, as noted above, her treatment consisted primarily of visits to her physician to obtain medication refills. *See, e.g., Edginton v. Colvin*, 625 Fed. Appx. 334, 336 (9th Cir. 2015) (in rejecting claimant's credibility, ALJ properly relied on claimant's "routine and conservative" back treatment, which generally consisted of medication and transcutaneous electrical nerve stimulation); *Hauff v. Colvin,* 2014 WL 4854712, at *7 (C.D. Cal. Sept. 30, 2014) (ALJ

1  reasonably concluded that claimant received only routine, conservative, and

2  non-emergency treatment because he was only treated with medication).

3  Additionally, the ALJ properly noted that there were several gaps in

4  Plaintiff's treatment, which further undermined her allegations of

5  debilitating pain.[1]  (AR at 29, 31).  *See, e.g., Marsh v. Colvin*, 792 F.3d 1170,

6  1173 n.2 (9th Cir. 2015) (ALJ properly considered treatment gap in

7  assessing claimant's credibility); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th

8  Cir. 2005) (ALJ properly relied on three- to four- month treatment gap in

9  partially discrediting claimant's testimony); *Johnson v. Shalala*, 60 F.3d

10  1428, 1434 (9th Cir. 1995) (affirming ALJ's finding that gap in medical

11  treatment undermined claimant's testimony of debilitating pain).

12  Furthermore, although Plaintiff was referred to a rheumatologist in

13  June 2011, she did not follow up with an appointment until September

14  2012.  (AR at 216 (May 23, 2012 treatment note, stating that rheumatology

15  appointment had been approved as of June 14, 2011, but that Plaintiff had

16  still not made an appointment)).  The ALJ properly relied on this

17  unexplained failure to pursue treatment in rejecting Plaintiff's credibility.[2]

18  (AR at 29-30).  *See, e.g., Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)

19

20  [1]  The Court notes that Plaintiff never alleged that the gaps in medical treatment
21  were due to an inability to afford treatment or any other reason that might justify her in
not seeking treatment during that time.  *See Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir.
22  1995) ("[A] disabled claimant cannot be denied benefits for failing to obtain medical
treatment that would ameliorate his condition if he cannot afford that treatment.").
23  Accordingly, the ALJ was permitted to rely on Plaintiff's treatment gaps in support of his
adverse credibility determination.

24  [2]  The medical record does not contain Plaintiff's rheumatology evaluation.
25  However, treatment notes from Plaintiff's primary care physician indicate that she was
evaluated by rheumatology in September 2012 and March 2013 for ANA and DS DNA
26  positivity.  (AR at 224, 229, 305).  After these appointments, it was determined that
Plaintiff did not meet the diagnostic criteria for Systemic Lupus Erythematosus, but that
27  she should continue to be monitored on a yearly basis, with follow up with rheumatology
28  in one year.  (AR at 305).

(ALJ may properly rely on failure to pursue treatment); *Bunnell v. Sullivan,* 947 F.2d 341, 346 (9th Cir. 1991) (ALJ may properly rely on plaintiff's unexplained or inadequately explained failure to seek treatment); *see also Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012) (ALJ may properly rely on claimant's failure to pursue mental health treatment where resistance was attributable not to a mental impairment, but to claimant's own personal preference).

### B. <u>Objective Medical Evidence</u>

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ properly noted the lack of medical evidence supporting Plaintiff's diagnosis of fibromyalgia.[3] (AR at 29-30). Indeed, the treatment notes appear to contradict Plaintiff's claim that her fibromyalgia is a disabling condition. (AR at 202 (in January 2011, Plaintiff described her pain level as 3/10); AR at 207 (in May 2011, hand x-rays were unremarkable, and Plaintiff stated that she has no joint pain aside from bilateral hand pain on and off for the past year and a half); AR at 216 (in May 2012, Plaintiff described her pain level as 3/10); AR at 224 (in August 2012, Plaintiff described her pain level as 2/10); AR at 304-5 (in May 2013, Plaintiff described her pain level as 2/10 and stated that her medications have helped); AR at 295 (in August 2013, Plaintiff described her pain level as

---

[3]     The Court acknowledges that the symptoms of fibromyalgia are mainly subjective. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *Rollins*, 261 F.3d at 855. The principal symptoms are pain, fatigue, disturbed sleep, stiffness, and – the only symptom that distinguishes it from other disease of rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the claimant must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the claimant to flinch. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); *Rollins*, 261 F.3d at 855. In this case, there is no evidence that Plaintiff was ever assessed with multiple tender points.

2/10)).  Furthermore, the consultative examiner, Bryan H. To M.D., evaluated Plaintiff in September 2013 and opined that she was capable of medium work.  (AR at 266-71).  The record contains no other medical opinions regarding Plaintiff's physical limitations.

### C. The ALJ's Observations

Next, the ALJ cited Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing."  (AR at 31).  The ALJ was permitted to rely on his own observations of Plaintiff at the hearing as one of several factors in assessing Plaintiff's credibility.  *See, e.g., Thomas*, 278 F.3d at 960 (in rejecting the claimant's testimony, the ALJ properly relied on her demeanor at the hearing and that "she seemed to engage in considerable histrionic exaggeration"); *Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999) (rejecting argument that ALJ improperly relied on observations of claimant made at hearing); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) ("The inclusion of the ALJ's personal observations does not render the decision improper.").

### D. Plaintiff's Daily Activities

Finally, the ALJ cited Plaintiff's daily activities in rejecting her credibility.  (AR at 31).  This does not appear to be a clear and convincing reason.[4]  Nonetheless, any error in considering Plaintiff's daily activities as a factor in the credibility determination was harmless.  An "ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'"  *Molina*, 674 F.3d at 1115 ("Although we have expressed different formulations of the harmless error rule depending on the facts of the case and the error at issue, we have adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate

---

[4]      At the hearing, Plaintiff testified to limited daily activities and specified that she could perform some of them only on good days.  (AR at 46-47, 163-71).

8

nondisability determination.'  In other words, in each case, we look at the record as a whole to determine whether the error alters the outcome of the case.") (quoting *Carmickle*, 533 F.3d at 1162-63).  The other reasons given by the ALJ are supported by substantial evidence and independently afford clear and convincing reasons supporting the ALJ's ultimate credibility determination.  *See Carmickle*, 533 F.3d at 1162-63 (The ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless where the remaining reasons were sufficiently supported by substantial evidence); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("In light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision.  Any error the ALJ may have committed . . . was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.").

## V.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is AFFIRMED.  Judgment shall be entered accordingly.

DATED: December 15, 2016                           _____

STEVE KIM
U.S. MAGISTRATE JUDGE